1  COURTNEY J. LINN (SBN 148855)
   clinn@orrick.com
2  ORRICK, HERRINGTON & SUTCLIFFE LLP
   400 Capitol Mall, Suite 3000
3  Sacramento, CA 95814-4497
   Telephone:  (916) 329-7992
4  Facsimile:   (916) 329-4900

5  THOMAS S. McCONVILLE (SBN 155905)
   tmcconville@orrick.com
6  ORRICK, HERRINGTON & SUTCLIFFE LLP
   2050 Main Street, Suite 1100
7  Irvine, CA 92614-8255
   Telephone:  (949) 567-6700
8  Facsimile:   (949) 567-6710

9  WARRINGTON S. PARKER III (SBN 148003)
   wparker@orrick.com
10 ORRICK, HERRINGTON & SUTCLIFFE LLP
   405 Howard Street
11 San Francisco, CA 94105-2669
   Telephone:  (415) 773-5740
12 Facsimile:   (415) 773-5759

13 Attorneys for Defendants Mytel International,
   Inc. and Gilbert N. Michaels
14
   (Additional counsel listed on the following page)
15

16              **UNITED STATES DISTRICT COURT**

17              **CENTRAL DISTRICT OF CALIFORNIA**

18

19 FEDERAL TRADE COMMISSION,          Case No. 87-07259 GHK (SSx)

20              Plaintiff,            **JOINT STIPULATION
                                      REGARDING DEFENDANTS**
21      v.                           **MICHAELS AND FELDMAN'S
                                      MOTION FOR PROTECTIVE**
22 MYTEL INTERNATIONAL, INC., et     **ORDER POSTPONING THEIR
                                      DEPOSITIONS AND RESPONSES**
23 al.,                              **TO THE FTC'S REQUESTS FOR
                                      PRODUCTION**
24              Defendants.
                                     Date:  September 1, 2015, 10:00 AM
25                                   Discovery Cutoff:  November 5, 2015
26                                   Pretrial Conference:  TBD
                                     Trial:  TBD
27                                   Hon. Suzanne H. Segal

28

TERRY W. BIRD (STATE BAR NO. 49038)
twb@birdmarella.com
ARIEL A. NEUMAN (STATE BAR NO. 241594)
aan@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendant Jerry P. Feldman

ELSIE B. KAPPLER
ekappler@ftc.gov
REENAH L. KIM
rkim1@ftc.gov
Federal Trade Commission
600 Pennsylvania Ave. NW, CC-9528
Washington, DC 20580
202-326-2466 (tel.) (Kappler)
202-326-2272 (tel.) (Kim)
202-326-3197 (fax)

JOHN D. JACOBS, Bar No. 134154
jjacobs@ftc.gov
Federal Trade Commission
10877 Wilshire Boulevard, Suite 700
Los Angeles, CA 90024
310-824-4343 (tel.)
310-824-4380 (fax)

Attorneys for Plaintiff
Federal Trade Commission

JOINT STIP RE DEFS MICHAELS & FELDMAN'S MOT PROT
ORDER POSTPONING DEPOSITIONS & RFP RESPONSES
87-07259 GHK (SSx)

# TABLE OF CONTENTS

**Page**

DEFENDANTS' POINTS AND AUTHORITIES

INTRODUCTION ............................................................................................. 1

    A.    The Criminal Investigation and the FTC's Contempt Motion ............ 2

    B.    Mr. Michaels and Mr. Feldman Are Targets of the Criminal Investigation ............................................................................................ 4

    C.    The FTC's Discovery Motion and the Court's Ruling ..................... 5

    D.    The FTC's Discovery Requests and the Parties' Meet and Confer ............................................................................................. 6

ARGUMENT .................................................................................................... 7

I.    A PROTECTIVE ORDER POSTPONING MR. MICHAELS' AND MR. FELDMAN'S DEPOSITIONS IS WARRANTED ................................ 8

    A.    There is a Heightened Need for a Protective Order Given the Overlap Between the Criminal Investigation and the FTC's Contempt Proceedings and the Cooperation Between the Two Government Agencies ................................................................. 8

        1.    A Protective Order Is Warranted ................................................. 8

        2.    There is a Heightened Need for a Protective Order ................. 11

        3.    A Protective Order is "Even More Appropriate" Given that Government Agencies Have Cooperated to Bring Both Civil and Criminal Proceedings ....................................... 12

    B.    There is No Set of Questions Relevant to the Contempt Proceeding that Does Not Implicate the Fifth Amendment Privilege ................................................................................. 13

II.    A PROTECTIVE ORDER POSTPONING MR. MICHAELS' AND MR. FELDMAN'S RESPONSES TO RFPS #1-19 AND 21 IS WARRANTED .................................................................................. 15

CONCLUSION ............................................................................................... 16


THE FTC'S POINTS AND AUTHORITIES

INTRODUCTION ........................................................................................... 17

PROCEDURAL BACKGROUND .................................................................... 17

ARGUMENT .................................................................................................. 19

I.    NO GOOD CAUSE EXISTS FOR A PROTECTIVE ORDER POSTPONING THE DEPOSITIONS OF MR. MICHAELS AND MR. FELDMAN ..................................................................................... 19

    A.    The Fifth Amendment Requires Defendants to Respond or Assert Their Privilege Against Self-Incrimination, Not Avoid the Deposition or Individual Questions Altogether ........................... 19

# TABLE OF CONTENTS
(continued)

**Page**

    B.    Issuing a Protective Order Would Award Defendants an
Unwarranted Stay..................................................................................22

II.    DEFENDANTS MUST RESPOND TO DOCUMENT REQUESTS
WITHOUT DELAY..........................................................................................24

    A.    The Fifth Amendment Does Not Shield Company Records From
Production .............................................................................................25

    B.    Even as to Personal Records, The Fifth Amendment Does Not
Shield Defendants From Responding to Document Requests............26

    C.    The FTC's Requests Are Reasonably Calculated to Lead to the
Discovery of Relevant Evidence Critical to Its Contempt Case –
No Other Showing is Required .............................................................27

CONCLUSION..........................................................................................................27

APPENDIX: RFPS AT ISSUE.................................................................................29

Pursuant to the Court's July 8, 2015 Order (ECF 129) and Local Rule 37, the parties met and conferred on July 27, 2015 and hereby submit this joint stipulation.

## Defendants' Points and Authorities

## INTRODUCTION

Defendants Michaels and Feldman seek a protective order that they not be deposed and not be required to respond to document requests propounded by the FTC in this civil proceeding as long as they remain the targets of an active criminal investigation. Courts routinely issue such orders in order to protect defendants' privilege against self-incrimination under the Fifth Amendment.

The rationale supporting the issuance of a protective order in this case is straightforward: If Defendants Michaels and Feldman are compelled to sit for a deposition, each faces the dilemma of either: (1) forfeiting his Fifth Amendment privilege and risking self-incrimination; or (2) invoking the Fifth Amendment privilege and risking adverse inferences in the civil case. Putting them to this choice, as courts have recognized, unduly burdens their constitutional rights.

A protective order is especially warranted here because there is a complete overlap between the FTC's contempt motion and the ongoing criminal investigation, as evidenced by the fact that the FTC contempt motion is premised almost entirely on evidence seized from Defendant Mytel International, Inc. ("Mytel").[1] Indeed, the FTC contempt motion was not even brought until after the Orange County District Attorney's office ("OCDA") began its criminal investigation, despite the fact that the FTC is claiming violations of the 1988 Stipulated Final Order that pre-date that investigation by years.

Any question the FTC asked Mr. Michaels or Mr. Feldman could serve as a "link in the chain" of evidence tending to establish criminal liability. *See Hoffman*

---

[1] Mytel now operates alongside another entity, G.N.M. Financial Services, Inc., dba IDCSERVCO ("G.N.M.") that performs the same services that Mytel performed during the timeframe relevant to the FTC's contempt motion. Any reference to Mytel in this Brief is intended to also include and refer to G.N.M, as is any reference to IDCSERVCO.

*v. United States*, 341 U.S. 479, 486 (1951). As such, Mr. Michaels or Mr. Feldman thus could invoke his Fifth Amendment privilege in response to any question. There is no relevant deposition question the FTC could ask either Defendant that would not implicate the Fifth Amendment. A protective order therefore is necessary and appropriate.

This is true even though formal criminal charges have yet to be filed. Courts have recognized that protective orders are warranted even when a civil defendant is only under criminal investigation and has not yet been charged. Here, moreover, law enforcement recently informed Mr. Michaels' counsel that charges are "inevitable."

A protective is also necessary and appropriate as to the document requests served on Defendants Michaels and Feldman individually. Although Mytel will produce documents responsive to the requests it received, Mr. Michaels and Mr. Feldman cannot respond because they would face the same dilemma they would face at a deposition. Their Fifth Amendment act of production immunity protects them from having to produce documents unless the FTC can establish, with reasonable particularity, both the existence of the documents sought and Mr. Michaels' or Mr. Feldman's possession of those documents. The FTC has not made this showing. Thus, requiring Mr. Michaels and Mr. Feldman to respond to these document requests at this time would severely burden their constitutional privilege.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Criminal Investigation and the FTC's Contempt Motion

*The Criminal Investigation.* On May 22, 2013, a joint federal-state task force that included the Huntington Beach Police Department ("HBPD") executed a search warrant at the business of Defendant Mytel in Culver City, California. *See* Kesler Decl., ¶ 8, PX3 (ECF 3-3, at 66). The HBPD seized hundreds of thousands of Mytel business records. *See, e.g.*, Goodhue Decl., ¶ 2 (Dkt. 20-2). That same

day, the HBPD executed search warrants on four independent sales companies ("ISCs"), at Mr. Michaels' home, and at the home of an alleged ISC owner.  Kesler Decl., ¶ 8, PX3 (ECF 3-3, at 66).

The affidavit in support of these search warrants contains allegations nearly identical to those in the FTC's contempt motion.  *Compare* PX3A (ECF 3-4, at 3) (search warrant) *with* FTC's Contempt Mot. (ECF 3-1).  The affidavit alleges that ISCs solicit fraudulent orders for photocopier toner by misrepresenting an affiliation with the consumer's usual toner supplier and by warning of an imminent price increase.  PX3A, at 16-34 (ECF 3-4, at 19-46).  The affidavit alleges that Mytel and Mr. Michaels are responsible for these alleged misrepresentations by ISCs.  *See* PX3A, at 18-43 (ECF 3-4, at 21-37).  The affidavit even references the 1988 Final Order that the FTC seeks to enforce.  PX3A, at 19 (ECF 3-4, at 22).

***The Contempt Motion.***  Within a month of the execution of the search warrants, the HBPD began providing documents seized from Mytel to the FTC. *See* Goodhue Decl., ¶ 2 (Dkt. 20-2).  Between June 2013 and March 2014, the HBPD provided copies of more than 185,000 seized documents to the FTC.  *Id.*

Until provision of these documents, the FTC had taken no actions against Mytel, Mr. Michaels or Mr. Feldman for more than 20 years.  The FTC had not even sought to audit their activities for approximately 15 years.  *See* 1988 Order, § XVI (authorizing the FTC to inspect Mytel documents and to interview Mytel officers and employees "for purposes of determining or securing compliance with this Order").  This is so despite the fact that the customer complaints on which the FTC ultimately based its contempt motion pre-date any search by the HBPD— some being as old as 2006.  *See, e.g.*, PX4B at 000897 (ECF 3-10, at 96) (complaint with BCA from June 2006).  And, this is so despite the fact that the complaints on which the FTC now relies either appear in the FTC's own database, the Consumer Sentinel, which is not otherwise available to the public, or appear on Better Business Bureau websites, which is as available to the FTC as any member of the

public.  *See* Hendrickson Decl., PX2 (ECF3-3, at 32); Burge Decl., PX4 (ECF 3-10, at 68).

Soon after the HBPD shared the fruits of its criminal investigation, the FTC filed its contempt motion in April 2014, which is based almost exclusively on the materials seized by the HBPD.  ECF 3.  Thus, the FTC's motion relies on a 21-page declaration from HBPD Detective Kevin Kesler with exhibits that comprise 8 of the 12 volumes of materials submitted by the FTC in support of its motion.  *See* PX3 (ECF 3-3 – ECF 3-10).  All of these materials were either seized from Mytel or reflect witness interviews conducted during the course of the various searches.

The remaining materials are: (1) written statements from consumer complainants (PX2, PX4 – PX15)—a category of information that is discussed at length in the HBPD's search warrant affidavit, *see* PX3A, at 18-19, 21, 23-34 (ECF 3-4, at 21-22, 24, 26-37); or (2) declarations from contempt proceedings brought by Toshiba in 2007 (PX21 – PX44)—litigation that the search warrant affidavit specifically relies upon to support its probable cause determination, *see* PX3A, at 19 (ECF 3-4, at 22).

In sum, the search warrant affidavit, as highlighted in Detective Kesler's declaration, claims that Mr. Michaels is responsible for a nationwide fraud scheme.  *See* Kesler Decl., ¶ 7 (ECF 3-3, at 69).  Detective Kesler and the OCDA claim that Mr. Michaels' acts were criminal.  The FTC claims that these same acts justify its contempt motion.

## B.    Mr. Michaels and Mr. Feldman Are Targets of the Criminal Investigation

Lead OCDA prosecutor, Marc Labreche, testified at the January 27, 2015 evidentiary hearing that "[w]e believe that Mr. Michaels has been operating a criminal enterprise for over 40 years."  McConville Decl., Exh. A, at 39:20-21 (Jan. 27, 2015 Evid. Hr'g Tr.) (filed herewith); *see also id.* at 22:7-8.  HBPD Sergeant Sasha Nikitin recently informed counsel that charges against Mr. Michaels are

"inevitable."  McConville Decl., ¶ 2.  And were that not enough, presently, Mr. Labreche has informed counsel for Mr. Michaels that the HBPD cannot provide documents responsive to a subpoena request served by Defendants Mytel and Michaels, citing a state law precluding discovery in a criminal case.[2]  McConville Decl., ¶ 3.

While Mr. Feldman has not received such a blunt warning, Detective Kesler shows that the HBPD views Mr. Feldman in the same light.  For example, Detective Kesler's declaration references Mr. Feldman as engaging in the same activity as Mr. Michaels and Mytel.  *See, e.g.,* Kesler Decl., PX3, ¶¶ 12, 46, 51-54, 57 (ECF 3-3, at 66) (referring repeatedly to the "defendants'" alleged conduct, without differentiating Mr. Feldman).  Detective Kesler's declaration also sets out facts regarding Mr. Feldman's role in the alleged conduct that gave rise to the criminal investigation.  *See, e.g. id.* ¶¶ 6, 12-20, 39-45.  Further, Mr. Feldman is the only employee named in the FTC's contempt motion—a motion that the FTC prepared while working closely with the HBPD and relying heavily on the HBPD's investigation (*see* McConville Decl, Exh. A, at 78:23-79:7, 84:5-10 (Jan. 27, 2015 Evid. Hr'g Tr.); ECF 29 at 3:1-4)—despite having been specifically excluded from the 1988 Stipulated Final Order.  All of this is a clear indication that the criminal authorities view Mr. Feldman as a target.

## C.    The FTC's Discovery Motion and the Court's Ruling

The FTC's Renewed Motion for Discovery sought leave to conduct specific forms of discovery, including the depositions of Mr. Michaels and Mr. Feldman.  *See* Dkt. 115-1.  At the July 7 hearing on the FTC's motion, the Court explained that it intended to open discovery for 120 days, but emphasized that it would not pre-approve any specific discovery requests.  McConville Decl., Exh. B, at 6:3-6, 6:15-23, 27:13-17 (July 7, 2015 Hr'g Tr.).  Regarding Defendants' concerns that

---

[2] Defendants do not believe that this is a correct position, and have initiated the meet and confer process.  However, the statement reflects that there is a pending criminal investigation.

deposing Mr. Michaels and Mr. Feldman would unduly prejudice their Fifth

Amendment rights, the Court invited defendants "to seek an order—a protective

order prohibiting that deposition or prohibiting particular topics." *Id.* at 24:9-13.

The Court elaborated: "[I]t may be that the FTC needs to pursue other forms of

discovery to develop material allegations against the defendants of contempt.  But it

may be that there are tangential facts or, you know, related facts that these

witnesses [Mr. Michaels and Mr. Feldman] can testify to without implicating their

Fifth Amendment concerns.  I just don't know until I would see the kinds of

questions that the FTC might ask them." *Id.* at 17:16-22.

In its written ruling issued the following day, the Court confirmed that "this

Order does not approve specific forms of discovery."  Order, at 12:1-2 (Dkt. 129).

The Court also reiterated that "it is preferable to address Fifth Amendment concerns

after the discovery has been served and, if necessary, on a question by question

basis." *Id.* at 13:13-15.

### D.       The FTC's Discovery Requests and the Parties' Meet and Confer

On July 10, the FTC served deposition notices on Mr. Michaels and Mr.

Feldman.  Parker Decl., Exh. A-B (filed concurrently).  Anticipating Defendants'

Fifth Amendment objections, the FTC stated it would timely meet and confer with

defense counsel regarding their objections. *Id.*  The FTC also served document

requests on Mr. Michaels and Mr. Feldman containing 21 document requests that

are identical to those the FTC served on Mytel.[3] *Id.*, Exh. C-E.

On July 22, as required by Local Rule 37 and the Court's July 8 Order (ECF

129), Defendants Michaels and Feldman sent a letter to the FTC setting forth their

objections, requesting a conference of counsel, and indicating that if the parties

were unable to reach agreement, Mr. Michaels and Mr. Feldman would seek a

protective order prohibiting their depositions and postponing their responses to

---

[3] Mytel has begun the process of collecting and reviewing documents.  It anticipates
providing documents, subject to limited objections. *See* Parker Decl., ¶ 3.

1  RFPs #1-19 and 21 until the conclusion of the criminal proceedings.  *Id.*, Exh. G.

2  The letter explained Mr. Michaels' and Mr. Feldman's position that there are no

3  relevant deposition questions the FTC could ask that would not implicate their Fifth

4  Amendment rights, but asked the FTC to identify any topics or questions it believes

5  would not implicate the Fifth Amendment privilege.  *Id.* at 3.  The letter also asked

6  the FTC to identify any documents it believes Mr. Michaels and Mr. Feldman could

7  produce without out implicating their Fifth Amendment act of production

8  immunity.  *Id.* at 3-4.

9       The parties met and conferred on July 27.  Parker Decl., ¶ 6.  During this

10  conference, the FTC stated that it believes there are topics about which it could

11  question Mr. Michaels and Mr. Feldman without implicating their Fifth

12  Amendment rights, but the FTC would not identify these topics except to say that

13  its 30(b)(6) deposition notice to Mytel was a good guide as to the topics it wishes to

14  cover.  *Id.*  The FTC did not respond to Defendants' request to identify any

15  documents that Mr. Michaels and Mr. Feldman could produce without implicating

16  their Fifth Amendment rights.  *Id.*, ¶ 7.

17                         **<u>ARGUMENT</u>**

18       The need for a protective order is heightened in this case because there is a

19  complete overlap between the pending criminal investigation and the FTC's

20  contempt proceedings.  Indeed, the civil proceedings by the FTC are the result of

21  cooperation by the OCDA and HBPD.  (*See infra* Section I.A).  Both Defendants

22  are the target of a criminal investigation, which implicates their Fifth Amendment

23  privilege regardless whether they have yet been formally charged.  (*See infra*

24  Section I.A).[4]  And because there is a complete overlap between the pending

25

26  _____

    [4] Mr. Michaels and Mr. Feldman are not asking for a stay of this case or even a stay
27  of all discovery.  Since the Court granted discovery on July 8, the FTC has already
    served RFPs on Mytel, a Rule 30(b)(6) deposition notice on Mytel listing 34
28  separate topics, and document subpoenas on twelve ISCs.  These discovery requests
    are not at issue in this motion.  Although Defendants believe good cause exists for a
    stay of all discovery, they seek only a protective order limited to preventing the

criminal investigation and the FTC's contempt motion, there are no relevant

questions that could be asked that do not implicate the Fifth Amendment privilege.

(*See infra* Section I.B).

These same Fifth Amendment concerns warrant a protective order regarding

the FTC's document requests served on Mr. Michaels and Mr. Feldman.  (*See infra*

Section II).

## I.    A PROTECTIVE ORDER POSTPONING MR. MICHAELS' AND MR. FELDMAN'S DEPOSITIONS IS WARRANTED

### A.    There is a Heightened Need for a Protective Order Given the Overlap Between the Criminal Investigation and the FTC's Contempt Proceedings and the Cooperation Between the Two Government Agencies

#### 1.    A Protective Order Is Warranted

"The court may, for good cause, issue an order to protect a party or person

from annoyance, embarrassment, oppression, or undue burden or expense,

including … forbidding the disclosure or discovery."  Fed. R. Civ. P. 26(c).

The United States Supreme Court has dictated that the Court should exercise

this authority in cases of parallel civil and criminal proceedings.   As the Court

explained in *United States v. Kordel*, where a defendant cannot answer a discovery

request "without subjecting himself to a 'real and appreciable' risk of self-

incrimination … we may assume that … the appropriate remedy would be a

protective order under Rule 30(b) [the predecessor to Rule 26(c)], postponing civil

discovery until termination of the criminal action."  397 U.S. 1, 8-9 (1970).  For

support, the Court cited with approval a case in which the district court granted a

protective order staying the depositions of two defendants until the conclusion of

their criminal case.  *Id.* at 9 n.15 (citing *Paul Harrigan & Sons v. Enter. Animal Oil

Co.*, 14 F.R.D. 333 (E.D. Pa. 1953)).  In that case, the district court explained that

"the interests of justice require[d]" the protective order because, while it would

specific discovery requests that would directly and substantially burden Mr.
Michaels and Mr. Feldman's constitutional rights.

"undoubtedly[]cause inconvenience and delay to the plaintiff, protection of the defendants' constitutional rights is the more important consideration."[5]  *Paul Harrigan & Sons*, 14 F.R.D. at 335.

Consistent with *Kordel*'s guidance, "courts routinely grant protective orders, or stay discovery pending the resolution of any criminal actions against the party invoking the privilege" in cases where a "party invoking constitutional protections against self-incrimination [has been] sued as [a] defendant[] in a closely-related civil action."  *Jones v. B. C. Christopher & Co.*, 466 F. Supp. 213, 224 (D. Kan. 1979) (citing cases); *see also Rodriguez*, 2007 WL 2029323, at *2 (protective order barring defendants' depositions); *Taylor, Bean & Whitaker Mortgage Corp. v. Triduanum Fin., Inc.*, 2009 WL 2136986, at *4 (E.D. Cal. 2009) (staying discovery).  In such cases, "the parties invoking the privilege must be protected as a matter of common sense.  Otherwise such persons might run the risk of suffering sanctions or default in a civil action on the one hand, or assisting their own criminal prosecution on the other."  *Jones*, 466 F. Supp. at 224.

---

[5] In granting the FTC's motion for discovery, the Court concluded that the five factors set forth in *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995), weighed in favor of proceeding with discovery immediately.  Order, at 12-15.  These factors are not the governing standard here, however.  The protective order sought by Mr. Michaels and Mr. Feldman is a "less drastic remed[y]" that is often appropriate even where a stay is not.  *Rodriguez v. Summit Mortgage Realty, Inc.*, 2007 WL 2029323, at *2 (N.D. Cal. 2007).  To obtain a protective order, Mr. Michaels and Mr. Feldman need only show "good cause," such as an "undue burden" on their Fifth Amendment rights.  Fed. R. Civ. P. 26(c).  Even assuming the *Keating* factors applied, moreover, they strongly support a protective order (even if not a stay).  With regard to the first two factors—the plaintiff's interest in proceeding expeditiously and the burden on the defendant—numerous courts have already determined that the defendant's constitutional rights must prevail.  *See, e.g., Corbin v. Fed. Deposit Ins. Corp.*, 74 F.R.D. 147, 149-50 (E.D.N.Y. 1977) ("protection of defendant's constitutional rights against self-incrimination is the more important consideration" than any inconvenience or delay to plaintiffs).  The third and fourth factors—the convenience of the court and the interests of third parties—would likely not even be implicated by a protective order prohibiting defendants' depositions.  And the fifth factor—the interest of the public in the civil and criminal litigation—supports a protective order as well.  *See, e.g., Square 1 Bank v. Lo*, 2014 WL 7206874, at *5 (N.D. Cal. 2014) ("the *criminal* case is of primary importance to the public" and the public has an interest in "ensuring that the criminal process is not subverted" by the civil case).

JOINT STIP RE DEFS MICHAELS & FELDMAN'S MOT PROT
ORDER POSTPONING DEPOSITIONS & RFP RESPONSES
87-07259 GHK (SSx)

1      This standard is the same even in cases where a civil defendant has not yet

2  been formally charged but, like here, is the target of a criminal investigation.  A

3  witness's Fifth Amendment privilege is threatened whenever there is a

4  "possibility," however remote, of prosecution.  *In re Master Key Litig.*, 507 F.2d

5  292, 293 (9th Cir. 1974).  Simply put, "[f]or all practical purposes … parallel

6  criminal and civil actions are 'pending' against the[] [civil] defendants" whose

7  depositions are sought.  *SEC v. Vesco*, 16 Fed. R. Serv. 2d 1237, 1973 WL 366, at

8  *3 (S.D.N.Y. 1973).  Accordingly, courts grant protective orders or stays to civil

9  defendants as routinely in cases where they are under investigation, but not have

10  not yet been indicted, as in cases where they have already been indicted.[6]

11      The Court's July 8 order cites a Ninth Circuit case from the stay context for

12  the proposition that "[t]he case for staying civil proceedings is 'a far weaker one'

13  when '[n]o indictment has been returned[, and] no Fifth Amendment privilege is

14  threatened.'"  ECF 129, at 13 (quoting *Fed. Sav. & Loan Ins. Corp. v. Molinaro*,

---

15  [6] *See, e.g., McGarvey v. Special*, 2007 WL 222018, at *2 (N.D. Okla. 2007) (staying
16  discovery directed at individual defendants); *Akuna Matata Investments, Ltd. v.
   Texas Nom Ltd. P'ship*, 2008 WL 2781198, at *2 (W.D. Tex. 2008) (granting
17  protective order where two witnesses were "under federal investigation" and two
   were affiliated with a corporation under investigation)); *Chao v. Fleming*, 498 F.
18  Supp. 2d 1034, 1040 (W.D. Mich. 2007) (granting stay where government advised
   the court that it had sufficient evidence to seek an indictment, "suggest[ing] that an
19  indictment is not far off"); *Jones v. City of Indianapolis*, 216 F.R.D. 440, 451 (S.D.
   Ind. 2003) (granting stay where defendants were under active criminal
20  investigation); *SEC v. Healthsouth Corp.*, 261 F.Supp.2d 1298, 1326 (N.D.Ala.
   2003) (granting stay where it appeared an indictment was "an eventuality"); *Fed.
21  Ins. Co. v. Tabb*, 1991 WL 113204, at *1 (N.D. Ill. 1991) (granting stay where
   defendant was target of grand jury investigation and the prosecutor "expect[ed] an
22  indictment naming [defendant] in due course"); *Brumfield v. Shelton*, 727 F. Supp.
   282, 284 (E.D. La. 1989) (granting stay where defendant was the target of a grand
23  jury investigation and represented through affidavit of counsel that an indictment
   was "imminent"); *White v. Mapco Gas Products, Inc.*, 116 F.R.D. 498, 502 (E.D.
24  Ark. 1987) (granting stay where defendants were undergoing a grand jury
   investigation and explaining "that an indictment has not yet been returned does not
25  make consideration of the motion for a stay any less appropriate); *Brock v. Tolkow*,
   109 F.R.D. 116, 120 (E.D.N.Y. 1985) (granting stay to defendants under a grand
26  jury investigation) (citing cases); *United States v. Braswell, Inc.*, 1981 WL 2144, at
   *2 (N.D. Ga. 1981) (granting protective order where defendant was the target of a
27  grand jury investigation); *Clark v. United States*, 481 F. Supp. 1086, 1099-1100
   (S.D.N.Y. 1979) (stay of discovery directed at individual defendants); *Corbin*, 74
28  F.R.D. at 149 (stay of discovery directed at individual defendants); *Dienstag v.
   Bronsen*, 49 F.R.D. 327, 329 (S.D.N.Y. 1970) (staying defendants' depositions).

889 F.2d 899, 903 (9th Cir. 1989)).  But this quote from *Molinaro* is inapplicable here.  *Molinaro* merely states that the case for a stay is weak where there has been no indictment *and* "no Fifth Amendment privilege is threatened."[7]

Here, Mr. Michaels' and Mr. Feldman's Fifth Amendment privilege is clearly threatened.  Mr. Michaels and Mr. Feldman face much more than a "possibility" of prosecution.  *In re Master Key Litig.*, 507 F.2d at 293.  An HBPD detective recently warned that charges are "inevitable."  McConville Decl, ¶ 2.  Thus, the fact that charges have yet to be filed is no reason to deny a protective order.

If the Court does not grant Mr. Michaels and Mr. Feldman a protective order, they will "be faced with an unnecessary dilemma: surrender their Fifth Amendment rights against self-incrimination, or not testify and risk the possibility of adverse inferences …."  *Jones*, 216 F.R.D. at 451.  Forcing this "quandary" (*id.*) upon Mr. Michaels and Mr. Feldman would be "manifestly unfair in light of the policy enunciated by the Supreme Court which proscribes the Government's imposition of a 'penalty' where an individual chooses to exercise his Fifth Amendment right to remain silent."  *Vesco*, 1973 WL 366, at *2; *see also Jones v. Conte*, 2005 WL 1287017, at *1 (N.D. Cal. 2005) (staying discovery because "[i]f discovery moves forward, [the] defendant will be faced with the difficult choice between asserting [his] right against self-incrimination, thereby inviting prejudice in the civil case, or waiving those rights, thereby courting liability in the [criminal] case").

## 2.   There is a Heightened Need for a Protective Order

The need for a protective order is heightened and particularly compelling in this case because of the perfect overlap between the pending criminal investigation

---

[7] Notably, this passage from *Molinaro* is a quotation from *SEC v. Dresser Industries, Inc.*, 628 F.2d 1368, 1376 (D.C. Cir. 1980), a case that involved a subpoena to a *corporation*, which does not have a Fifth Amendment privilege.  It was in this context that the *Dresser* court stated that the "case at bar is a far weaker one" than the usual case for staying parallel civil proceedings, in part because "no Fifth Amendment privilege is threatened."  *Id.*

and the FTC's contempt proceedings.  What the FTC is calling a violation of the 1988 Stipulated Final Order, the HBPD and OCDA is calling criminal and threatening to prosecute.  This is proven by the FTC's contempt motion, which is based on the documents and the information obtained through the HBPD's investigation (*see* ECF 29, at 3:1-4), including the search warrant affidavit (PX3A (ECF 3-4, at 3)).

In such circumstances, courts have recognized that the need for a protective order is heightened.  *See Square 1 Bank*, 2014 WL 7206874, at *1 (a protective order or stay is particularly warranted "where civil and criminal proceedings wholly or substantially overlap" (internal quotation marks omitted)); *Brock*, 109 F.R.D. at 119 ("A stay of civil proceedings is most likely to be granted where the civil and criminal actions involve the same subject matter … and is even more appropriate when both actions are brought by the government.").

### 3. A Protective Order is "Even More Appropriate" Given that Government Agencies Have Cooperated to Bring Both Civil and Criminal Proceedings

A protective order is "even more appropriate when both [the civil and criminal proceedings] are brought by the government."  *Brock*, 109 F.R.D. at 119.  The reason is that "[w]hen both actions are brought by the government, there is a danger that the government may use civil discovery to obtain evidence and information for use in its criminal prosecution, and by doing so, circumvent the Fifth Amendment rights against self-incrimination."  *Cruz v. County of DuPage*, 1997 WL 370194, at *3 (N.D. Ill. 1997).  Thus, in *Healthsouth Corp.*, the court granted a stay of the civil case where the government had "manipulated simultaneous criminal and civil proceedings," because the court recognized that in such a case, "there is a special danger that the government can effectively undermine rights that would exist in a criminal investigation by conducting a de facto criminal investigation using nominally civil means."  261 F. Supp. 2d at 1326.

The harm posed to Mr. Michaels and Mr. Feldman's constitutional rights is not minimized merely because a different government agency is bringing each case. The HBPD and FTC cooperated extensively in bringing the contempt motion. There is little question that the FTC will share information obtained in civil discovery with the criminal authorities, thereby "circumvent[ing] the Fifth Amendment rights" of Mr. Michaels and Mr. Feldman. *Cruz*, 1997 WL 370194, at *3. Most of the FTC's case is based on documents and information obtained through the criminal investigation. *See* Kesler Decl, PX3 (ECF 3-3 – ECF 3-10); *see also* ECF 29, at 3:1-4. And the FTC collaborated extensively with the HBPD when preparing its contempt motion. *See* McConville Decl., Exh. A (Tr. of Jan. 27, 2015 Evid. Hr'g, at 78:23-79:7, 84:5-10).

Finally, it appears that the OCDA is strategically waiting to move forward with the criminal case in order to take advantage of the FTC's civil discovery. The OCDA is following this case closely enough that Mr. Labreche recently informed counsel that he knew discovery had been ordered. Neuman Decl., ¶ 2 (filed herewith).

**B.**     **There is No Set of Questions Relevant to the Contempt Proceeding that Does Not Implicate the Fifth Amendment Privilege**

The privilege against self-incrimination may be invoked whenever the answer to a question could serve as a "link in the chain" of evidence tending to establish criminal liability. *Hoffman v. United States*, 341 U.S. 479, 486 (1951).

The FTC stated that it believes there are deposition topics that would not implicate the Fifth Amendment, but when asked to identify those, it refused. Parker Decl., ¶ 6. The most the FTC would say is that none of the questions it would ask should come as a surprise and that the topics listed in its Rule 30(b)(6) deposition notice to Mytel are examples of the topics about which it would likely question Mr. Michaels and Mr. Feldman. *Id.*

1    If the FTC's Rule 30(b)(6) notice is the appropriate guide, there are no

2    questions that do not implicate the Fifth Amendment. Most of the topics in the

3    FTC's Rule 30(b)(6) notice go to the heart of its case, and thus the criminal case as

4    well. *Id.*, Exh. F. For example, the FTC intends to explore Defendants'

5    relationship with various ISC representatives (Topics 3-6), the measures

6    Defendants took to ensure ISCs complied with the 1988 Final Order (Topic 13),

7    and any ISCs Defendants terminated or suspended for noncompliance (Topic 14).

8    The FTC also intends to ask about any communications between Defendants and

9    the ISCs, including but not limited to communications regarding: sales policies and

10   practices; hiring, training, discipline , and termination of ISC employees; product

11   pricing; financing; sale of assets (including accounts receivable); selection and use

12   of ISC dbas; and compliance with the 1988 Final Order (Topic 18). The FTC

13   intends to ask detailed questions about any financial support Defendants provided

14   to the ISCs (Topics 19-22). The FTC further intends to ask about Defendants' role

15   in developing ISCs' customer lists, in determining when an ISC had a prior

16   relationship with a customer, and in preparing sales scripts (Topics 9-11). And the

17   FTC intends to ask detailed questions about Defendants' knowledge and

18   investigation of consumer complaints, Defendants' responses and remedial actions,

19   and their documentation of the foregoing (Topics 12, 15).

20       Even those 30(b)(6) topics that appear on their face to be relatively

21   innocuous—*e.g.*, Mytel's corporate structure, ownership, and management (Topic

22   1); or total sales and gross revenues for each ISC (Topic 26)—still directly

23   implicate the Fifth Amendment.  Among other things, these topics are relevant to

24   the degree of Mr. Michaels' and Mr. Feldman's involvement in the alleged fraud

25   scheme.

26       In sum, absent a protective order, Mr. Michaels' and Mr. Feldman's Fifth

27   Amendment privilege would be severely burdened. They would face the

28   impossible dilemma of waiving the privilege and risking self-incrimination, or

invoking and risking civil contempt liability in a case where the FTC is seeking

$128 million and incarceration.  Particularly in the extraordinary circumstances of

this case, the Court should follow the numerous courts that have granted protective

orders prohibiting the depositions of individual defendants until the conclusion of

the criminal proceedings.

## II.    A PROTECTIVE ORDER POSTPONING MR. MICHAELS' AND MR. FELDMAN'S RESPONSES TO RFPS #1-19 AND 21 IS WARRANTED

The FTC served identical RFPs on Mytel, Mr. Michaels, and Mr. Feldman,

primarily seeking Mytel business records.   Parker Decl., Exh. C-E.  Mytel is in the

process of searching for and collecting responsive documents to produce to the

FTC.  *Id.*, ¶ 3.  For Mr. Michaels and Mr. Feldman, however, responding to all but

one of these RFPs would present the same dilemma they would face at a deposition.

Accordingly, the Court should issue a protective order postponing Mr. Michaels'

and Mr. Feldman's responses to RFPs #1-19 and 21 until the resolution of the

criminal proceedings.[8]

The act of producing any documents in response to RFPs #1-19 and 21

would be testimonial, and thus implicate the Fifth Amendment, because it would

force Defendants Michaels and Feldman to each admit that any such documents

"exist, are in his possession or control, and are authentic."  *In re Grand Jury*

*Subpoena*, 383 F.3d 905, 909 (9th Cir. 2004) (citing *United States v. Hubbell*, 530

U.S. 27, 36 (2000) ("the act of producing documents in response to a subpoena may

---

[8] The RFPs at issue are set forth in the Appendix at the end of this Joint Stipulation. RFP # 20 is the one request that does not implicate the Fifth Amendment dilemma. That request seeks "[a]ll tax returns filed with federal and state tax authorities prepared by You or on Your behalf, including all supporting documents and attachments."  While not implicating the Fifth Amendment, RFP #20 is nonetheless objectionable.  Among other objections Defendants may raise, tax returns are protected from disclosure in discovery unless the requesting party establishes their relevance and "the court … find[s] that there is a compelling need for the returns because the [relevant] information contained therein is not otherwise readily obtainable."  *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 191 (C.D. Cal. 2006).  The FTC has requested financial information from Mytel concerning consumer orders it has shipped and invoiced.  The FTC has no demonstrable need for tax returns.

1  have a compelled testimonial aspect")).  The FTC cannot force Defendants to

2  produce such documents unless it can establish, with "reasonable particularity,"

3  both "the existence of the documents sought and [Michaels' and/or Feldman's]

4  possession of them."  *Id.* at 910.  On July 22, Mr. Michaels and Mr. Feldman asked

5  the FTC to identify any documents for which it could make this required showing.

6  Parker Decl., Exh. F.  The FTC has not responded to this request.  Parker Decl., ¶ 6.

7           And Defendants would fare no better were they to simply respond by serving

8  objections and not produce any documents.  Any objections would require them to

9  assert their Fifth Amendment privilege, which could render them susceptible to an

10  adverse inference in the civil case.  They would face the same unfair choice as they

11  would if forced to attend a deposition and either testify or assert their Fifth

12  Amendment privilege.  Mr. Michaels and Mr. Feldman should not have to choose

13  between either: (a) responding to RFPs #1-19 and 21 and risking self-incrimination;

14  or (b) invoking their Fifth Amendment privilege and risking an adverse inference.

15  As courts have recognized, a protective order is necessary in such circumstances to

16  protect against this unfair choice.  *See, e.g., Freedom Med. Inc. v. Gillespie*, No. 06-

17  cv-3195, 2006 WL 3924101, at *1 (E.D. Pa. Jan. 16, 2006) (protective order

18  relieving defendant from having to respond to document requests because

19  responding would implicate his Fifth Amendment act of production immunity).

20                                              **CONCLUSION**

21           For the foregoing reasons, Defendants Michaels and Feldman respectfully

22  seek a protective order prohibiting their depositions and postponing their responses

23  to RFPs #1-19 and 21 until the conclusion of the OCDA/HBPD criminal

24  proceedings.

25

26

27

28

JOINT STIP RE DEFS MICHAELS & FELDMAN'S MOT PROT
ORDER POSTPONING DEPOSITIONS & RFP RESPONSES
87-07259 GHK (SSx)

**The FTC's Points and Authorities**

**INTRODUCTION**

No good cause exists for issuing a protective order that would postpone virtually all discovery against Defendants Michaels and Feldman until state court criminal proceedings (which have yet to be initiated) are concluded.  Appearing for a deposition and responding to document requests in the FTC's civil contempt case would not "jeopardize" Defendants' Fifth Amendment rights, and a protective order is thus unnecessary.  Consistent with longstanding Supreme Court authority, courts have routinely recognized that defendants in civil actions who are also facing parallel criminal proceedings may choose either (a) to participate fully in civil discovery and risk self-incrimination in the criminal case; or (b) to invoke their Fifth Amendment privilege and risk an adverse inference in the civil case.  The Ninth Circuit has made clear there is nothing improper, much less "manifestly unfair," about this circumstance.

Whether to issue a protective order is a matter of judicial discretion.  Here, nothing requires this Court to grant Michaels and Feldman a free pass excusing them from having to respond or participate in discovery critical to the FTC's contempt case.  Indeed, allowing Michaels and Feldman to postpone this discovery would, in effect, allow them to stay the FTC's case or force the FTC to proceed without affording it the opportunity to develop crucial evidence.  Because Defendants have not provided any basis for this drastic measure, their motion should be denied.

**PROCEDURAL BACKGROUND**

Since filing the April 2014 Contempt Motion, the FTC has endeavored to proceed expeditiously with its contempt case against Defendants.  Within days after the Court's discovery ruling, the FTC propounded document requests to Defendants Mytel, Michaels, and Feldman on July 10, 2015.  The same day, it also served notices for depositions of Michaels and Feldman on September 2 and 3.

By letter dated July 22, Defendants Michaels and Feldman notified the FTC of their intent to move for a protective order that would permit them to avoid having to appear for depositions.  They also indicated that, rather than timely serve individual written responses and objections to the FTC's document requests, Defendants would seek a protective order to shield them from this obligation.

During the parties' LR 37 teleconference on July 27, the FTC pressed Defendants to act promptly.  Citing the relatively short 120-day discovery period and the Court's statements at the July 7, 2015 hearing (in which the parties were expressly invited to utilize the Court's *ex parte* procedures for discovery motions), FTC counsel urged Defendants to file their motion for protective order on an expedited *ex parte* basis.  Defendants refused.

Having noticed their motion for a September 1 hearing, Defendants requested that their depositions be rescheduled to the week of September 28-October 2, and asked that the deadline for their responses to the document requests be extended to one week after the Court rules on the instant motion.  In light of representations by Defendants' counsel that Mytel's document production will not be completed until September 14, and to accommodate scheduling conflicts,[9] the FTC consented to reschedule depositions as Defendants requested.  Given the November 5, 2015 close of discovery, however, the FTC declined to extend the deadline for document request responses beyond September 8, 2015.  *See* Decl. of Reenah L. Kim, Attach.1 (Aug. 10, 2015 email from R. Kim to D. Spencer, M. Freedman, C. Linn, T. McConville, W. Parker, A. Neuman)

---

[9] (including religious holidays in September that impact the availability of counsel for both sides)

# ARGUMENT

## I.   No Good Cause Exists For a Protective Order Postponing the Depositions of Mr. Michaels and Mr. Feldman

Defendants conveniently ignore Supreme Court and Ninth Circuit precedent, both of which have long held that there is nothing inherently unfair about parallel civil and criminal proceedings.  Defendants' Fifth Amendment rights are fully protected by asserting the privilege or answering under oath.  Moreover, these cases recognize that a defendant's invocation of his Fifth Amendment privilege may give rise to an adverse inference in the civil case, and find there is nothing improper about having to make this choice (*i.e.*, respond to civil discovery and risk self-incrimination, or assert the privilege and risk an adverse inference).  Because Defendants' unfounded motion for a protective order would operate as a stay of the FTC's civil contempt case – an outcome this Court has already rejected – Defendants' motion should be denied.

### A.   The Fifth Amendment Requires Defendants to Respond or Assert Their Privilege Against Self-Incrimination, Not Avoid the Deposition or Individual Questions Altogether

Defendants' argument that Messrs. Michaels and Feldman must choose between forfeiting their Fifth Amendment privilege and invoking the privilege and risking adverse inferences does not come close to meeting the good cause required for issuance of a protective order.  *See* Fed. R. Civ. P. 26(c)(1).  Indeed, it is well-settled that such a choice presents no Constitutional issue, especially where, as here, the alleged criminal exposure is inchoate.

For example, in *United States v. Kordel*, 397 U.S. 1 (1970), the Supreme Court squarely rejected the defendants' contention that being forced to confront the choice of invoking his Fifth Amendment or answer interrogatories and risk self-incrimination was unfair, unjust, or a due process violation.  *Kordel*, 397 U.S. at

11.[10] *See also United States v. Stringer*, 535 F.3d 929, 933 (9th Cir. 2008) ("There is nothing improper about the government undertaking simultaneous criminal and civil investigations. . . ."). Likewise, the Ninth Circuit has explained that "[a] defendant has no absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege." *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 326 (9th Cir. 1995). The Supreme Court and Ninth Circuit have also found nothing improper about the risk of an adverse inference. *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976) (affirming the "prevailing rule that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them"); *Keating*, 45 F.3d at 326; *Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903, 911 (9th Cir. 2008); *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000).[11] Defendants' argument disregards this Supreme Court and

---

[10] The language Defendants cite from *Kordel* (p. 8) is dicta addressing a hypothetical situation (regarding the unavailability of a corporate agent to answer interrogatories) that is inapplicable to this case. *Kordel*, 397 U.S. at 9 ("But we need not decide this troublesome question.").

[11] Consistent with *Kordel*, *Baxter*, and *Keating*, other Ninth Circuit cases have rejected defendants' attempts on Fifth Amendment grounds to postpone discovery pending the conclusion of parallel criminal proceedings. *E.g.*, *Int'l Business Machines Corp. v. Brown*, 857 F. Supp. 1384, 1387 (9th Cir. 1994) ("Defendants are not entitled to a stay or continuance of this civil litigation merely because criminal charges also are pending against them); *Fed. Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 902-03 (9th Cir. 1989) (no constitutional right to a stay). *See also ESG Capital Partners LP v. Stratos*, 22 F. Supp. 3d 1042, 1045-46 (C.D. Cal. 2014); *FTC v. J.K. Publ'ns, Inc.*, 99 F. Supp. 2d 1176, 1198 (C.D. Cal. 2000) ("[N]ot only is it permissible to conduct a civil proceeding at the same time as a related criminal proceeding, even if that necessitates invocation of the Fifth Amendment privilege, but it is even permissible for the trier of fact to draw adverse inferences from the invocation of the Fifth Amendment in a civil proceeding.") (citing *Keating*, 45 F.3d at 326).

1  Ninth Circuit authority, relying instead largely on district court cases outside this

2  jurisdiction, pre-dating *Keating* and *Stringer*, that can easily be distinguished.[12]

3        Accordingly, even if deposition questions would implicate Defendants' Fifth

4  Amendment rights, the cure is not to shield them from participating in their

5  depositions altogether, or even from being deposed on particular topics.  Rather, as

6  this Court recognized, a defendant protects his Fifth Amendment rights by asserting

7  the privilege on a question-by-question basis.  *ESG Capital Partners LP v. Stratos*,

8  22 F. Supp. 3d 1042, 1045-46 (C.D. Cal. 2014) (rejecting request for stay of civil

9  proceeding in which defendant's Fifth Amendment rights were "certainly

10  implicated" because the civil and parallel criminal cases were based on the same set

11  of facts, even though fact finder could consequently draw an adverse inference)

12  (citing *Keating*, 45 F.3d. at 326); *see also* July 8, 2015 Order, ECF 129 at 14 ("Fifth

13  Amendment concerns can be raised to individual questions, but not every inquiry to

14  Defendants will implicate the Fifth Amendment.").

15

16

17

---

18  [12] In *Vesco*, for example, the SEC "seriously contemplated" referring the matter for
   criminal prosecution.  It acknowledged civil discovery was "essential" to its
19  criminal case, and that criminal prosecution would be "foreclosed" if not for
   defendant's civil deposition.  *SEC v. Vesco*, 72 Civ. 5001, 16 Fed. R. Serv. 2d 1237,
20  1973 WL 366, at *2 (S.D.N.Y. Feb. 16, 1973).  The *Vesco* court was particularly
   concerned that, unlike *Kordel*, the civil and criminal matters involved the same
21  plaintiff, defendants, facts, and law, and the SEC refused to grant use-immunity.
22  *Id.* at *6.  By contrast, here the FTC is working independently of any criminal
   investigation by HBPD or OCDA.
23

24      Similarly, in *Jones v. B.C. Christopher & Co.*, 466 F. Supp. 213 (D. Kan.
25  1973), the court rejected plaintiffs' attempt to use the Fifth Amendment both as a
   sword and shield, but expressly acknowledged a party could assert the privilege to
26  protect his rights.  *Jones v. B.C. Christopher*, 466 F. Supp. at 223, 225 ("While a
   civil litigant may refuse to answer specific questions, or may make partial answers
27  and stop when he believes further comment would incriminate him, . . . he cannot
28  refuse to be deposed altogether.").

### B.    Issuing a Protective Order Would Award Defendants an Unwarranted Stay

Though Defendants claim their protective order is a "less drastic" remedy than a stay, their requested protective order would force the FTC to defer key components of discovery critical to its contempt case until after any yet-to-be-commenced criminal proceedings have concluded. The FTC would thus have to suspend its prosecution of the contempt matter until some indefinite point in the future.[13] As a result, granting the protective order Defendants seek would award them the "extraordinary remedy" of a stay without basis – a proposition this Court has already rejected. *See* July 8, 2015 order, ECF 129 at 12, 14 ("Defendants are not entitled to stay discovery indefinitely based on the possibility that the government in some other proceeding might one day seek to indict Defendants.").

Indeed, the information sought through the Michaels and Feldman depositions is critical to the FTC's contempt case. As demonstrated by the wealth of probative evidence in the Contempt Motion filing, Michaels and Feldman were actively involved in the ongoing contempt. Through multiple lawsuits and law enforcement actions, as well as the thousands of complaints they received (including those found in Mr. Feldman's office),[14] Michaels and Feldman were well

---

[13] No trial date has been set for a criminal case. In fact, no criminal charges have even been brought, and Defendants have not been indicted – unlike the defendants in a number of the cases on which Defendants rely. *See, e.g., Square 1 Bank v. Lo*, 12-cv-05595-JSC, 2014 WL 7206874 (N.D. Cal. Dec. 17, 2014) (defendant at sentencing stage of criminal proceeding); *Taylor, Bean & Whitaker Mortgage Corp. v. Triduanum Fin., Inc.*, No. CIV 2:09-cv-0954, 2009 WL 2136986 (E.D. Cal. July 15, 2009) (indictment one month before civil suit was filed); *Rodriguez v. Summit Mortgage Realty, Inc.*, Nos. C05-002904 HRL, C05-02905 HRL, 2007 WL 2029323 (N.D. Cal. July 11, 2007) (court extended stay pending resolution of criminal trial, which was set to take place in seven months); *Jones v. Conte*, No. C 045312S1, 2005 WL 1287017 (N.D. Cal. Apr. 19, 2005) (criminal case predated commencement of related civil case); and *Cruz v. County of DuPage*, No. 96 C-7170, 1997 WL 370194 (N.D. Ill. June 27, 1997) (defendants already indicted).

[14] Mr. Feldman also kept various reports of complaints in his office at IDCServco. *See* PX3 at ¶ 41; PX3N.

aware that their sales companies routinely solicited telemarketing sales using prohibited misrepresentations.[15]  Among other things, they provided input regarding telemarketing scripts and use of fictitious names to evade detection.[16]  Moreover, they had close involvement with sales company operations, providing financial and other operational support.[17]  Mr. Feldman conceded that, to his knowledge, no sales company was ever terminated, despite the ongoing Order violations.[18]  The FTC is entitled to question Michaels and Feldman at deposition about these and other relevant matters.

    To assume, as Defendants urge, that even the mere potential for future criminal charges is sufficient to postpone discovery would lead to the very result the Supreme Court cautioned against in *Kordel*.  Namely, "it would stultify enforcement of [] law" to require the government "to choose either to forgo recommendation of a criminal prosecution once it seeks civil relief, or to defer civil proceedings pending the ultimate outcome of a criminal trial."  *Kordel*, 379 U.S. at 11.[19]

---

[15] For example, Mr. Michaels agreed to stop doing business in Georgia to resolve the Georgia Governor's Office of Consumer Protection's allegations that sales companies had posed as consumers' usual suppliers.  PX2H.  Mr. Michaels admitted that consumers' complaints are frequently based on their perception that the telemarketer represented their regular supplier.  PX3K at 000261.

[16] *See* PX3 at ¶ 20.

[17] For example, telemarketing sales bonds for all the sales companies were obtained through a single provider, who agreed to do so only on the condition that Mr. Michaels and his companies serve as indemnitors.  PX3 at ¶¶ 47-48; PX3Y.  The agent who provided the bonds dealt directly with IDCServco and Michaels who, in turn, chose how to distribute the bonds.  *See* PX3BB-EE.  As Michaels admitted, the sales companies did not have the money to finance themselves, so he and his companies did.  PX3K at 000259.  Among other things, they regularly approved sale companies' loan requests.  *See, e.g.*, PX3GG-HH; PX3II; PX3JJ; PX3KK-OO.

[18] *See* PX3V.

[19] Contrary to Defendants' allegations, there is no effort or intent by the FTC, HBPD, or OCDA to "manipulate" their respective civil and criminal proceedings to

The key factors the Ninth Circuit outlined in *Keating* weigh in favor of permitting the FTC's critical discovery to proceed without further delay.[20]  Doing so would serve the public interest.  It would enable the FTC to secure recourse for the many hundreds of consumers harmed by Defendants' scheme.  *See FTC v. J.K. Publications, Inc.*, 99 F. Supp. 2d 1176, 1197 (C.D. Cal. 2000) (victims' interests in recovering their losses strongly weigh against a stay, especially in cases pending for over a year).  Many of Defendants' victims are non-profits and small organizations with limited budgets ill-equipped to absorb the losses they suffered.  In addition, allowing the discovery to proceed without delay would serve the Court's interest in promoting the efficient prosecution of cases on its docket.

## II.    Defendants Must Respond to Document Requests Without Delay

Defendants Michaels and Feldman contend they are entitled to a protective order postponing their responses to all but one of the FTC's document requests because the very "act of producing any documents . . . would be testimonial, and thus implicate the Fifth Amendment."  This argument is unavailing for three reasons.

---

"undermine" Defendants' rights.  Though the FTC's Contempt Motion is based on many of the same facts that may be at issue in the California authorities' criminal investigation, the civil contempt is a separate action the FTC is pursuing independently to enforce this Court's Stipulated Final Judgment and Order.  There is no bad faith here.  The FTC is not, for instance, working at the behest or direction of HBPD or OCDA to collect evidence on their behalf.

[20] *See Keating*, 45 F.3d at 324-25 (factors for courts to consider in deciding whether to issue a stay:  (1) the plaintiff's interest in proceeding expeditiously and potential prejudice caused by delay; (2) burden on the defendant; (3) the court's interest in managing its cases and the efficient use of judicial resources; (4) the interests of persons or entities not parties to the civil litigation; and (5) the public interest in pending civil and criminal litigation).

## A.      The Fifth Amendment Does Not Shield Company Records From Production

First, Defendants' argument ignores Supreme Court authority holding that a Fifth Amendment privilege does not apply to corporate records.  As the Court made clear, the Fifth Amendment does not provide a basis for corporate custodians, or individuals in possession of corporate documents, to withhold such documents from production.  "[C]orporate records are not private and therefore are not protected by the Fifth Amendment."  *Braswell v. United States*, 487 U.S. 99, 119 (1988) (holding that a custodian may not resist a subpoena for corporate records on Fifth Amendment grounds).  Individuals must produce corporate documents in their possession even if the documents could incriminate them personally.[21]

Thus, to the extent Michaels or Feldman possesses responsive documents as a function of their corporate officer roles at Mytel or G.N.M. Financial/IDCServco, those documents must be produced.  If, for example, Mr. Michaels has copies of email correspondence or contracts with a sales company that are stored in his home office, or if he exchanged text messages on his personal smartphone relating to

---

[21]  Defendants cite *In re Grand Jury Subpoena*, 383 F.3d 905 (9th Cir. 2004), to support their argument that "[t]he act of producing any documents . . . would be testimonial, and thus implicate the Fifth Amendment, because it would force Defendants Michaels and Feldman to each admit that any such documents 'exist, are in his possession or control, and are authentic.'"  However, the Ninth Circuit in this case drew a distinction between corporate records (for which no Fifth Amendment privilege exists) and the personal records of a former employee.  *See In re Grand Jury Subpoena*, 383 F.3d 905, 909 n. 1 (9th Cir. 2004) (discussing the "collective entity" rule, which "provides that an individual is not permitted to invoke a Fifth Amendment privilege with respect to records of a collective entity, such as a corporation"); *Freedom Med. Inc. v. Gillespie*, No. 06-cv-3195, 2006 WL 3924101, at *3 (E.D. Pa. Jan. 16, 2006) (denying motion for protective order as to the production of corporate records by individual who was the company's sole owner, shareholder, and employee, notwithstanding arguments it would raise self-incrimination risks for the individual in the criminal case).

loans or other financial support provided to a sales company,[22] those corporate records must be produced.

### B.   Even as to Personal Records, The Fifth Amendment Does Not Shield Defendants From Responding to Document Requests

Second, even as to purportedly "private" records, the Fifth Amendment does not shield Defendants from responding to document requests.  If, for example, Mr. Michaels exchanged text messages on his personal smartphone relating to loans he provided to a sales company in his personal capacity (rather than as an officer of Mytel or G.N.M. Financial/IDCServco) and thus takes the position that these are not corporate records, he can choose either to produce the relevant documents or object based on his Fifth Amendment privilege.  At this juncture, he has done neither.  The Fifth Amendment privilege might ultimately protect Mr. Michaels from being compelled to produce potentially incriminating documents.  However, it does not allow him simply to avoid providing any response whatsoever.[23]  Moreover, that potential Fifth Amendment concerns <u>might</u> protect someone from a compelled document production is not a foregone conclusion.  The Ninth Circuit emphasizes that "[w]hether the act of production has a testimonial aspect sufficient to attract Fifth Amendment protection is a fact-intensive inquiry."  *In re Grand Jury Subpoena*, 383 F.3d 905, 909 (9th Cir. 2004).

By asking the Court for a protective order postponing Defendants' responses to virtually all of the FTC's document requests in their entirety, Defendants skip several steps and presume, without basis, that the Fifth Amendment automatically excuses them from any and all discovery obligations.  To the contrary, Supreme

---

[22] *See, e.g.,* FTC Requests for Production 6, 7, 12.

[23] Indeed, the Ninth Circuit in *Grand Jury Subpoena* found it was the actual <u>production</u> of subpoenaed documents that <u>might</u> bear a testimonial aspect protected by the Fifth Amendment – not the act of merely serving written responses to document requests in civil discovery.  *In re Grand Jury Subpoena*, 383 F.3d 905, 909 (9th Cir. 2004) ("The Fifth Amendment protects a person solely against compelled self-incrimination.").

Court and Ninth Circuit authority expressly recognize and allow not only for

discovery to proceed,[24] but provide that a court in the civil case may draw an

adverse inference from a defendant's Fifth Amendment invocation. *E.g.*, *Baxter*,

425 U.S. at 318; *Keating*, 45 F.3d at 325-26.

### C.    The FTC's Requests Are Reasonably Calculated to Lead to the Discovery of Relevant Evidence Critical to Its Contempt Case – No Other Showing is Required

Third, Defendants' contention that the FTC must establish at the outset –

before written responses or objections have even been served – "both the existence

of the documents sought and Mr. Michaels' or Mr. Feldman's possession of those

documents" is without merit.  There is no precedent for this argument.  A primary

showing of existence and possession of documents is not required for civil

discovery.

The law permits the FTC to obtain discovery relevant to its claims, and

requires only that discovery requests "be reasonably calculated to lead to the

discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).  Here, there is no

question the FTC's document requests are reasonably calculated to obtain critical,

relevant information that supports and develops the allegations in its Contempt

Motion, consistent with the Federal Rules of Civil Procedure and this Court's

discovery parameters.  *See* Fed. R. Civ. P. 26; July 8, 2015 order, ECF 129 at 11.

Accordingly, Defendants must promptly serve responses to each and every request.

## CONCLUSION

The Fifth Amendment does not shield Defendants from participating in

discovery.  Defendants' attempts to stay the FTC's contempt proceedings under the

guise of a protective order are without merit, and their request for a protective order

should therefore be denied.

---

[24] *E.g.*, *Kordel*, 397 U.S. at 7; *Stringer*, 535 F.3d at 933.

Dated:  August 11, 2015

COURTNEY J. LINN
THOMAS S. McCONVILLE
WARRINGTON S. PARKER III
Orrick, Herrington & Sutcliffe LLP

By: _____ /s/ Warrington S. Parker III
WARRINGTON S. PARKER III
Attorneys for Defendants Mytel International,
Inc. and Gilbert Michaels

TERRY W. BIRD
ARIEL A. NEUMAN
Bird, Marella, Boxer, Wolpert, Nessim, Drooks &
Lincenberg, P.C.


By: _____ /s/Ariel A. Neuman
ARIEL A. NEUMAN
Attorneys for Defendant
Jerry P. Feldman

(As authorized by Counsel on August 4, 2015)

ELSIE B. KAPPLER
REENAH L. KIM
JOHN D. JACOBS


By: _____ /s/ Reenah L. Kim
REENAH L. KIM
Attorneys for Plaintiff Federal Trade
Commission

(As authorized by Counsel on August 11, 2015)

## **Appendix: RFPs At Issue**

1. Documents identifying all persons and entities to whom You distributed a copy of the Permanent Injunction.

2. Signed copies of the Permanent Injunction that You secured from each person and entity to whom You distributed the Permanent Injunction.

3. Documents sufficient to show the job duties, roles, and responsibilities of the Individual Defendants.

4. Documents sufficient to show Individual Defendants' income and other benefits received from Corporate Defendants.

5. Organizational charts or other documents sufficient to identify all Corporate Defendant employees or agents responsible for customer service, investigating and responding to consumer complaints, relations with Sales Companies, and compliance with the Permanent Injunction.

6. For every Sales Company whose orders for photocopier or office supplies You invoiced or shipped to consumers, documents showing (a) the company's legal name, any business name it has used, its address and telephone number; (b) the contact person(s) and their position(s) in the company; (c) any written agreement You maintained with the company and any modifications thereto; (d) accounting or bookkeeping records You generated for that company; (e) the date any agreements You had with the company were initiated and, if applicable, the date and reasons for termination.

7. All communications between You and any Sales Company, including but not limited to communications regarding: telemarketing sales policies and practices; hiring, training, discipline, and termination of Sales Company employees; product pricing; financing; sale of assets (including but not limited to assets such as accounts receivable); selection and use of the Sales Company's "doing business as" names; and compliance with the Permanent Injunction.

8. Documents sufficient to identify each Sales Company that solicited an order for which You received a consumer complaint (whether directly or indirectly, or through any third party such as the Business Consumer Alliance, toner companies, or equipment suppliers).

9. Documents identifying each Sales Company that You terminated your agreement, relationship or affiliation with for failing to comply with any obligation set forth in the Permanent Injunction.

10. All Sales Company registration documentation filed with the California State Attorney General under the Telephonic Seller's Disclosure Act that were also submitted to You.

11. Documents relating to all telephonic seller surety bonds You obtained for or on behalf of any Sales Company, including documents sufficient to show the amounts paid and Sales Company names, and any related indemnity agreements.

12. Documents relating to any financial and other support You provided to any Sales Company, including but not limited to loans and UCC liens.

13. All scripts prepared or used by You or any Sales Company, including but not limited to scripts relating to telemarketing sales, customer service, order fulfillment, and refund or order cancellation requests.

14. All documents that substantiate or support any claims or representations made by You or any Sales Company to a consumer that it represents or is affiliated with: the consumer's regular or usual supplier of photocopier or office supplies; the manufacturer, seller, lessor or servicer of the consumer's photocopier or office equipment; or any company authorized by a manufacturer to distribute, sell or service its products.

15. All documents that substantiate or support any claims or representations made by You or any Sales Company to a consumer that the consumer has a prior business relationship with You or the Sales Company.

16. All documents showing Your efforts to ensure that the disclosures required under Part II.a. of the Permanent Injunction are made at the outset of any contact with a consumer to solicit an order.

17. Records of every complaint and every request for cancellation of a shipped and invoiced order (whether received directly or indirectly, or through any third party such as the Business Consumer Alliance, toner companies, or equipment suppliers), and Your response to each complaint, including documents showing the nature and result of any investigation You conducted as to the validity of the complaint, and documents showing the basis for any determination that a complaint caused by an act or practice prohibited by the Permanent Injunction has been cured.

18. All financial statements, ledgers, and balance sheets for each Corporate Defendant.

19. Documents sufficient to show, for each Sales Company and each year: total sales; gross revenues obtained; total amount of refunds paid (full or partial); total amount of chargebacks.

21. All records necessary to show Your compliance with the Permanent Injunction.